VANDERVOLGEN *v.* MANCHESTER FIRE ASSURANCE CO.

| 123 | 291 |
|-----|-----|
| 124 | 460 |
| 123 | 291 |
| s82NW | 46 |

1. FIRE INSURANCE—VIOLATION OF CONDITIONS—WAIVER.

Where an insurance company, on receipt of an affidavit of insured that a fire originated from a lighted lamp held by him while engaged in drawing oil from a tank in his store, wrote insured, denying liability under the policy, and calling attention to the condition therein claimed to have been violated, an objection that the company, by referring to the condition as one relating to the use of coal oil, instead of kerosene, waived the right to rely upon a breach of the condition, is without force.

2. SAME—USE OF KEROSENE—SPECIAL AGREEMENT.

Where a fire-insurance policy provided in printing that the policy should be void, unless otherwise provided by special agreement, if certain enumerated articles be kept or used on the premises, but which printed provision permitted the use and sale of kerosene oil under certain conditions, the fact that the policy was expressly made to cover a stock of "paints, oils, * * * and such other goods as are usually kept" in a hardware store, did not operate to annul the

printed provision as to the conditions under which kerosene might be used and sold.

3. SAME—FORFEITURE.

Under the clause of the Michigan standard fire policy providing that it shall be void if there be kept or used on the premises "petroleum, or any of its products of greater inflammability than kerosene oil of the United States standard (which last may be used for lights, and kept for sale accord ing to law, but in quantities not exceeding five barrels, provided it be drawn and lamps filled by daylight, or at a distance not less than 10 feet from artificial light)," a forfeiture is incurred if kerosene be drawn in any other manner than that specified.

Error to Hillsdale; Chester, J. Submitted January 11, 1900. Decided March 13, 1900.

*Assumpsit* by Henry Vandervolgen against the Manchester Fire Assurance Company on a policy of insurance. From a judgment for defendant, plaintiff brings error. Affirmed.

*B. E. Sheldon* and *C. A. Shepard*, for appellant.

*Lockerby & Lockerby* and *C. C. Johnson*, for appellee.

MONTGOMERY, C. J. The plaintiff brought an action on a policy of insurance of $1,200 "on his stock of merchandise, consisting mainly of hardware, cutlery, paints, oils, glass, tinware, stoves, agricultural implements, tools, plated ware, harnesses, and such other goods as are usually kept by a hardware merchant in such a village." The policy, in its printed portion, contains the following provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above-described premises benzine, benzole, dynamite, ether, fireworks, gasoline, Greek fire, gunpowder exceeding twenty-five pounds in quantity, naphtha, nitroglycerine or other explosives, phosphorus, or petroleum, or any

of its products of greater inflammability than kerosene oil of the United States standard (which last may be used for lights, and kept for sale according to law, but in quantities not exceeding five barrels, provided it be drawn and lamps filled by daylight, or at a distance not less than ten feet from artificial light): *Provided,* a loss shall occur on the property insured while such breach of condition continues, or such breach of condition is the primary or contributory cause."

The plaintiff signed an affidavit stating the cause of the loss as follows:

"I, Henry Vandervolgen, make the following statement as to origin of the fire of February 16, 1899, by which my property was burned, as near as I can recall the circumstances, to wit: On the evening of February 16, 1899, at about the hour of eight o'clock, I went into the back room of my store, with a lighted lamp in my hand, for the purpose of drawing oil from a tank kept for that purpose; and, as I was in the act of drawing oil from said tank, something dropped from overhead, striking me on the arm, and knocking the lamp from my hand to the floor, breaking the lamp, and setting fire to the oil from the lamp. I think, when the lamp struck the floor and broke, it was one or two feet from the measure into which the oil was running from the tank. I think I was standing, say four to six feet from the tank when the lamp was knocked from my hand."

The defendant thereupon wrote, denying liability, and, when action was brought, set up as a defense the violation of this condition. The circuit judge found for the defendant, and plaintiff brings error.

It is contended first that there was a waiver of the right to rely on this defense by the letter above quoted. It is said that the defendant gave no notice that it relied upon a forfeiture by the use of kerosene oil; that coal oil alone was referred to. The point is too technical. It is perfectly clear that the claim of the defendant could not be misapprehended.

The meritorious question is, What construction should be placed on the contract? Plaintiff contends that the clause in question, by its terms, applies when it is not

otherwise provided by agreement indorsed on the policy, and that, by the written portion of the policy, it is made to cover oils and such other goods as are usually kept in a hardware store, etc., and that this is a provision otherwise than in the printed clause. There are numerous cases which support the contention of plaintiff to this extent: When the policy provides that it shall be avoided if the assured keeps articles of a certain class unless otherwise provided, a policy in terms covering such articles, or including them by a designation as "articles usually kept in a store," is valid; and in the latter case it may be shown by evidence *aliunde* that the articles which are designated in the policy as extrahazardous are such as are usually kept in a store. *Niagara Fire Ins. Co.* v. *De Graff*, 12 Mich. 124; *Fraim* v. *Insurance Co.*, 170 Pa. St. 151 (32 Atl. 613, 50 Am. St. Rep. 753); *Yoch* v. *Insurance Co.*, 111 Cal. 503 (44 Pac. 189, 34 L. R. A. 857). The defendant contends, however, that this line of cases does not meet the question here involved, for it is said the printed portion of the policy itself permits the keeping and sale of kerosene, but that what is provided against is that kerosene shall be drawn in the night-time within a specified distance from an artificial light; that this provision is entirely consistent with the fact that the insurance covers kerosene. This view seems entirely sound, and was sanctioned in *Gunther* v. *Insurance Co.*, 34 Fed. 501.

The question still remains whether the clause in question should be construed to work a forfeiture if the assured does not observe the regulations as to drawing oil. The case of *Snyder* v. *Insurance Co.*, 59 N. J. Law, 544 (37 Atl. 1022, 59 Am. St. Rep. 625), is cited by plaintiff. The policy contained a provision that it should be void if "there be kept, used, or allowed on the above-described premises naphtha, or petroleum, or any of its products of equal or greater inflammability than kerosene oil of legal standard (which last may be used for lights only, provided the oil be drawn and the lamps be trimmed and

filled solely by daylight)." The court, by a somewhat strained construction, held the parenthetic clause to be a regulation of the use of kerosene for lights only, and not to relate to or prohibit other uses of kerosene. The question in this case is different. By the parenthetic clause in this policy the use for lighting purposes or keeping for sale is not prohibited, but it is provided that the oil be drawn by daylight, or not less than 10 feet from artificial light. This language is plain and unambiguous. We cannot doubt that it was intended to and should be construed as providing a forfeiture for the drawing of kerosene in any other manner than that provided. The circuit judge placed this construction on the contract, and his judgment is affirmed.

The other Justices concurred.